303 Ga. 88
FINAL COPY

S17A1357.  BARNES et al. v. CHANNEL et al.

NAHMIAS, Justice.

In this feud between siblings over their aunt's estate, the question presented is the propriety of the extensive relief granted by the trial court on a motion for an interlocutory injunction.  Because most of the relief was not proper interlocutory relief, we vacate the disputed parts of the trial court's order and remand the case.

1.     The first seeds of the feud were sown on July 29, 2008, when Frances Huff gave Charles Barnes, Jr., her nephew, power of attorney over her affairs, which he then handled until her death.  By 2014, Huff had moved from her house into a nursing home.  In June 2014, she signed a quitclaim deed conveying the house to Barnes, and he and his girlfriend, Madeline Jackson, moved in.  Huff died nine months later, on March 21, 2015, at the age of 95.

Huff's will, which she executed in May 2009 — several years before

conveying the house to Barnes — directed that her house should be sold and the sale proceeds, as well as the rest of her estate (with the exception of specific monetary bequests to a seminary and a church), divided per capita among Barnes and his siblings Bernard, Mary, and Geraldine (Appellees). The will named Barnes as the executor, but Appellees objected to his appointment on the grounds that he had not provided any accounting of his actions as Huff's fiduciary and had misappropriated her personal property and money. Appellees also alleged that Barnes had a conflict of interest because he was "the grantee of the decedent's home at a time when the decedent lacked the mental capacity to convey the title of the property to him." Barnes did not contest the objection to his appointment as executor, and Bernard was appointed instead. On February 2, 2016, Barnes filed a petition for declaratory judgment against Appellees in the Fulton County Superior Court, seeking to affirm the validity of the quitclaim deed.

On April 14, 2016, Appellees, in their individual capacities and in Bernard's capacity as executor, filed a tort action against Barnes and Jackson (Appellants) in the same trial court, alleging breach of fiduciary duty; fraud; theft by taking, deception, and conversion, including while the estate was

2

unrepresented; civil conspiracy to commit theft and misappropriation; and undue influence involving the quitclaim deed. Appellees requested an accounting, a constructive trust to hold funds misappropriated by Barnes, and an interlocutory and permanent injunction ordering Appellants to immediately turn over to the estate the money and property Barnes had allegedly misappropriated and ordering that Barnes had forfeited his rights as a beneficiary under Huff's will. Appellees further requested that Appellants be evicted from Huff's former residence and that a writ of possession for the property be issued to Huff's estate, and they also requested punitive damages and attorney fees.

The next day, Appellees filed an emergency motion for "turn over of estate assets and interlocutory injunction." They alleged that the estate had "been attempting to determine what assets exist, get possession of the assets, and otherwise work with [Appellants]" to allow the will to be probated, but Appellants were being uncooperative. Therefore, Appellees filed the motion in "an attempt to marshal and secure the remaining available assets" of the estate while the tort action was pending. Appellees asked the court to require Appellants to turn over all property, including the house; to turn over or put into a constructive trust all money belonging to the estate; and to provide an

3

accounting of all policies and annuities that were or had been in Huff's name. Appellees also requested expedited discovery in the form of "immediate videotaped depositions, as well as authority to serve subpoenas for [Appellants'] banking records and tax returns." On June 29, 2016, the trial court entered an order consolidating the declaratory judgment and tort actions and directing the parties to mediation. The order also stayed discovery until further order of the court. According to Appellants, Barnes was unable to attend mediation because of his poor health; he suffers from multiple myeloma and dementia and has been frequently hospitalized.

On September 12, 2016, Appellants filed a motion to withhold ruling on the disposition of the real property until completion of discovery and a hearing on the merits. The trial court held a hearing on September 21, at which the court expressed concern about Barnes's apparent theft from Huff and said that the court wanted Barnes, who was not at the hearing because he was in a rehabilitation center, to appear and answer under oath questions about transfers from Huff's bank account. Appellants' attorney said that he wanted to produce evidence to explain the transfers and to prove that Huff had the capacity to convey the residence to Barnes when she signed the quitclaim deed. The court

appeared to reopen discovery, and the next hearing was scheduled for October 11, 2016.[1]

At that hearing, Appellants introduced affidavits of the notary and the two witnesses who signed the quitclaim deed conveying the property to Barnes. All three affidavits said that Huff was "aware and very alert" when she signed the deed. Appellees introduced three bank statements from Barnes that he had provided to them, but noted that he had not provided all of the statements they requested. Appellees called a record keeper to authenticate documents showing Huff's mental state; a nurse practitioner and a doctor, both of whom had cared for Huff; and Barnes. One of the medical records showed that Huff had been diagnosed with dementia by the time the quitclaim deed was executed. The nurse testified that Huff did not have the mental capacity to know what she was signing when she signed the quitclaim deed, and the doctor testified that Huff's short-term memory was so bad at that time it was questionable whether she knew what was actually going on. In his testimony, Barnes had difficulty

---

[1] Much of the discussion about the production of evidence for the hearing was confusing, with the judge continuing to insist that he wanted to question Barnes and Appellants' attorney repeatedly insisting that he wanted the opportunity to present evidence. Near the end of the hearing, Appellees' attorney said, "I'm assuming I have subpoena power if discovery is open," to which the judge responded, "Absolutely, you can subpoena whoever you want."

remembering who made most of the transfers from Huff's account or where they went, but he claimed to remember that Huff was of sound mind when she signed the quitclaim deed and that she had been planning to give him the house for many years.

Appellees' final witness was Bernard's wife, who had summarized the estate's accounts. When Appellees sought to introduce that summary, Appellants objected. The judge then asked Appellees what relief they were seeking, to which their counsel answered, "an injunction whereby the house and everything that belong[s] to the estate comes back to the estate." The judge then said to Barnes:

> Your conduct is reprehensi[ble] and this is one of the most disturbing cases I've seen [in] 20 years on the bench. You robbed from this woman and you stole from her and you changed her life insurance and your conduct is despicable. So I [am] hereby going to enter an order striking the quitclaim deed and then I'm going to order the house be sold in accordance with the will, and he has until November 11th at 5 p.m. to vacate the premises. Submit me an order.

Appellants' attorney asked to be heard, to which the judge responded:

> I didn't believe a word your client had to say, by the way. I have been doing this 20 years, and he's got selective memory and he stole from this woman and he just profited and it's just despicable. She was 90-something years old and he wants to come

in here and selectively remember things. . . . There's nothing else I need to hear. There's nothing you can tell me. Okay? So submit me an order. I have been very patient.

The judge concluded that Huff did not have capacity to enter the quitclaim deed, that Barnes took advantage of her, and that it was a violation of the power of attorney agreement for Barnes to take the property.[2]  When Appellants' attorney objected that Huff's capacity was a jury question, the judge said: "You can appeal it. You can appeal it. Because I'm using the equitable powers of this Court because — you can just appeal it." Appellants' attorney then began to argue that the court had not considered the proper standards for interlocutory injunctive relief, but the judge cut him off, saying, "I told you what I'm doing. I'm entering that order. You may appeal it."

Eight days later, on October 19, 2016, the trial court entered an order granting Appellees' motion. After several pages discussing Barnes's villainous actions with Huff's assets, the order stated that the executor had requested an interlocutory injunction, "which was converted to a permanent injunction by the

---

[2] The power of attorney agreement said, in part, "I must not transfer title to any of the Principal's funds or other assets into my name alone. My name must not be added to the title of any funds or other assets of the Principal, unless I am specifically designated as agent for the Principal in the title."

Court pursuant to notice provided at the hearings." The court then ordered Appellants to turn over the house to the executor. The court found that the quitclaim deed was "procured in derogation of the express terms of the Power of Attorney," that it was "procured by undue influence," and that Huff "lacked the capacity to make the conveyance." The court declared the deed void and ordered Appellants to vacate the property. The court also ordered the turnover within ten days of all other assets, money, and personal property "once belonging to the Decedent (and/or her Estate), which was conveyed to [Appellants] from July 29, 2008 to present." Appellants were further ordered to provide the executor's attorney an accounting of Huff's past and present accounts. Finally, the court held that Barnes "has forfeited his rights as a beneficiary under the Decedent's Will based on his egregious conduct, and shall take nothing thereunder." On November 1, 2016, Appellants filed an appeal to this Court.[3]

2.    Appellants do not challenge the portion of the trial court's order

---

[3] Unless otherwise ordered by the trial court — and there was no such order here — an injunction is not stayed during the pendency of an appeal. See OCGA § 9-11-62 (a). Accordingly, proceedings in this case continued in the trial court after the notice of appeal was filed. We offer no opinion as to how the current posture of the case will affect any proceedings on remand.

requiring them to provide an accounting, but they challenge the rest of the relief granted by the trial court. All of that relief — ordering Appellants to transfer the house and other assets to the estate, invalidating the quitclaim deed, evicting Appellants from the house, and preventing Barnes from inheriting under Huff's will — is *permanent*. The motion that the order purported to resolve, however, asked for *interlocutory* relief. And the hearing on the motion was the parties' opportunity to present evidence and arguments relevant to *interlocutory* relief.

In its order, the trial court acknowledged the permanent nature of the relief granted, saying that the requested interlocutory injunction had been "converted to a permanent injunction by the Court pursuant to notice provided at the hearings." We can find no such notice in the record. At no point before or during the October 11, 2016 hearing (or the September 21 hearing, for that matter) did the court expressly state or unambiguously indicate that it was giving notice of, or giving the parties an opportunity to be heard on, the conversion of the hearing on temporary relief to a trial on permanent relief.

> "[T]he general rule is that entering permanent relief after an interlocutory hearing is improper." . . . Under certain circumstances, the [Civil Practice Act] does permit a trial court, either "[b]efore or after the commencement of" the interlocutory hearing, to "order the trial of the action on the merits to be advanced

9

and consolidated with the [interlocutory] hearing." OCGA § 9-11-65 (a) (2). However, the court's authority to so consolidate is "'tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits.'"

McHugh Fuller Law Group, PLLC v. PruittHealth-Toccoa, LLC, 297 Ga. 94, 96 (772 SE2d 660) (2015) (citations omitted).

Failure to give such notice may be overlooked "where there is no objection or where the parties have acquiesced." McHugh Fuller, 297 Ga. at 97 (citation and punctuation omitted). Appellants, however, made clear at several points during the hearing that they objected to the court's granting permanent relief. When the court said that it was ordering Barnes to vacate the house, for example, Appellants' attorney asked to be heard. His request was denied. When the court decided the issue of Huff's capacity, Appellants' attorney objected, arguing that this was a jury issue. Again, his objection was rebuffed. Appellants' attorney then began to argue about the proper evaluation of interlocutory relief, but the court cut him off. And no more evidence was allowed to be presented; indeed, the direct examination of Appellees' witness was stopped midstream, with no cross-examination by Appellants.

Appellants also objected to the court's award of permanent relief on the

10

ground that discovery was not complete. Even assuming that the trial court lifted its order staying discovery on September 21, by the time of the October 11 hearing on interlocutory relief, discovery had been open for a total of no more than three-and-a-half months, and the court did not announce that it was shortening the ordinary six-month discovery period. See Uniform Superior Court Rule 5.1.[4] Before the hearing, Appellants had filed a motion seeking to withhold ruling on the disposition of the real property until discovery was complete, and at the hearing, both sides indicated that they were still gathering evidence which they wanted to present to the court. Accordingly, the trial court's curtailment of discovery by granting premature permanent relief was not permissible. See OCGA § 9-11-26 (permitting parties to use various methods to obtain discovery and outlining the scope of discovery). Compare Hoffman v. Fletcher, 244 Ga. App. 506, 509 (535 SE2d 849) (2000) (explaining that the

---

[4] Rule 5.1 says:

In order for a party to utilize the court's compulsory process to compel discovery, any desired discovery procedures must first be commenced promptly, pursued diligently and completed without unnecessary delay and within 6 months after the filing of the answer. In any action in which an answer is not filed within 30 days of service, or by the date set forth in any extension or court order, the 6-month period shall begin to run 30 days after service. At any time, the court, in its discretion, may open, extend, reopen or shorten the time to utilize the court's compulsory process to compel discovery.

11

trial court did not err in granting summary judgment while the discovery period was still open because there was no evidence that the opposing party "was waiting on any additional discovery"; "she sought no discovery after the discovery period was extended"; and she did not "file any request that the trial court defer its ruling until discovery was completed").[5]

For these reasons, all of the relief challenged by Appellants must be vacated. See McHugh Fuller, 297 Ga. at 98. Only the portion of the trial court's order directing an accounting can stand.[6]

Judgment vacated in part and case remanded. All the Justices concur.

---

[5] Notably, the evidence that had been gathered during discovery and that was presented at the hearing showed a factual dispute on the questions of Huff's capacity to enter the deed and Barnes's influence over her, so the court could not summarily adjudicate those questions even if proper notice of the court's plan to address permanent relief had been given and discovery had been completed. See Warren v. Warren, 221 Ga. 227, 228 (144 SE2d 115) (1965) (explaining that "[o]rdinarily mental capacity to make a deed is a question of fact to be determined by a jury" unless "the evidence demands a finding"); McGahee v. Walden, 216 Ga. 352, 353 (116 SE2d 559) (1960) (explaining that where the evidence of undue influence "is in conflict, it is a question for the jury to determine").

[6] Most of the relief ordered by the trial court could be properly granted if due process and civil procedure requirements are observed and if the evidence supports such rulings. However, the source of the authority the trial court believed it had to declare that Barnes cannot inherit under the will is unclear. Indeed, this Court has held that such decisions about disinheritance are generally left to the legislature and are not for the courts to impose as punishment for bad behavior. See, e.g., Crumley v. Hall, 202 Ga. 588, 590-591 (43 SE2d 646) (1947) (holding that a husband who allegedly murdered his intestate wife could still inherit from her because there was no statute barring his inheritance), superseded by OCGA § 53-1-5.

12

Decided February 19, 2018.

Equity. Fulton Superior Court. Before Judge Schwall.

Stephen H. Robinson, for appellants.

Stephen H. DeBaun, for appellees.